UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANE LOUISE FITZGIBBON,

    Plaintiff,

v.                                                    Case No: 8:15-cv-706-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Diane Louise Fitzgibbon, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the decision is reversed and the case is remanded for further consideration.

## BACKGROUND

**A.**    **Procedural Background**

Plaintiff filed an application for a period of disability and disability insurance benefits on January 23, 2012. (Tr. 206–208.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 124–138.) Plaintiff then requested an administrative hearing. (Tr. 139.) Upon Plaintiff's request, on August 6, 2013, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 37–85.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits. (Tr. 19–36.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied. (Tr. 1–18.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff was born in 1952 and claimed disability beginning on July 22, 2007 ("Alleged Onset Date"). (Tr. 206, 223–224.) Plaintiff alleged disability based on osteoarthritis, deafness in her left ear, fibromyalgia, asthma, an impaired immune system, Lyme disease, severe allergies, a hip replacement, Epstein Barr virus, gastritis, and esophagitis. (Tr. 238.) Plaintiff has a high school education and past relevant work history as an order clerk and a shipping order clerk. (Tr. 24, 30, 239.)

In rendering the decision, the ALJ first determined that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2008 ("Date Last Insured"). (Tr. 24.) The ALJ stated that he considered evidence from the Alleged Onset Date through the Date Last Insured ("Relevant Time Period"), but did not consider evidence after the Date Last Insured. (Tr. 24.)

The ALJ concluded that Plaintiff had not performed substantial gainful activity during the Relevant Time Period. (Tr. 24.) The ALJ noted that Plaintiff returned to work on a part-time basis in the fall of 2008, after the Date Last Insured. (Tr. 24, 256, 259.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: childhood asthma, history of fibromyalgia, history of hiatal hernia, and degenerative changes in the cervical spine. (Tr. 24.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25–26.)

The ALJ concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds, but not at open or unprotected heights, and must avoid working in poorly ventilated areas as well as concentrated exposure to industrial smoke, fumes, dusts, and gases. (Tr. 26.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 27–30.)

Based on Plaintiff's RFC, the ALJ determined that, during the Relevant Time Period, Plaintiff was capable of performing her past relevant work as an order clerk and a shipping order clerk. (Tr. 30.) Accordingly, the ALJ concluded that Plaintiff was not disabled at any time during the Relevant Time Period. (Tr. 22, 30.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* at §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* at § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. *Id.* A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

(11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's finding as to Plaintiff's cervical spine disorder was not based on substantial evidence and (2) the ALJ failed to articulate adequate reasons for discounting the opinions of Plaintiff's treating physician. For the reasons that follow, Plaintiff's first contention warrants reversal and remand for further proceedings.

**A.     Evidence Regarding Plaintiff's Cervical Spine Condition**

First, Plaintiff argues that the ALJ "seemed to discredit that [Plaintiff] suffered from severe neck pain/symptoms prior to her insured status expiring pointing to the lack of imaging before that date and lack of limitations noted in the progress notes prior to her insured status expiring." (Dkt. 19 at 9) (internal citations omitted.) The ALJ, Plaintiff argues, failed to "acknowledge her long history of cervical spine problems prior to her insured status expiring." (Dkt. 19 at 9.)

Plaintiff's first contention turns on the ALJ's findings regarding a car accident Plaintiff had in April 2008, which was after the Date Last Insured. (Dkt. 19 at 9.) In his decision, the ALJ addressed the April 2008 medical evidence relating to Plaintiff's cervical spine condition after her car accident and concluded that "one could reasonably argue the intervening motor vehicle accident that occurred in April of 2008 worsened the claimant's symptoms only after the date last

insured and indicates that the evidence after the date last insured does not relate[] back prior to the accident." (Tr. 25.) Plaintiff argues that, contrary to the ALJ's finding, the April 2008 medical evidence shows that Plaintiff's cervical spine condition is degenerative, was not caused solely by the car accident, and thus existed during the Relevant Time Period. (Dkt. 19 at 9.)

Plaintiff argues that the ALJ's assumption that the car accident worsened Plaintiff's spinal condition was harmful because it "played a significant role in [the ALJ's] decision to discredit [Plaintiff] and Dr. [Carol] Elkins," Plaintiff's treating physician. (Dkt. 19 at 13.) Accordingly, Plaintiff argues, had the ALJ credited Plaintiff's testimony regarding her pain and the opinions of Dr. Elkins, Plaintiff's "ability to perform work would have been compromised even more greatly," and "additional limitations could well have resulted in a finding of disability." (Dkt. 19 at 13.) Plaintiff does not, however, identify specific limitations the ALJ failed to consider. (Dkt. 19 at 13.)

Looking to the ALJ's decision, the ALJ determined that Plaintiff's history of hiatal hernia and degenerative changes in her cervical spine were severe impairments. (Tr. 24.) In assessing Plaintiff's RFC, the ALJ considered (1) Plaintiff's reports made in connection with her disability application and her testimony at the hearing, (2) objective medical evidence, (3) opinion evidence, and (4) written statements provided by non-medical sources. (Tr. 26–30.)

First, the ALJ described reports Plaintiff submitted as part of her disability application in which Plaintiff alleged disability due to the impairments of arthritis, deafness in one ear, asthma, impaired immune system, Lyme disease, severe allergies, a hip replacement, Epstein Barr virus, fibromyalgia, gastritis, and esophagitis. (Tr. 238.) The ALJ considered Plaintiff's reports regarding her walking, standing, and climbing limitations. (Tr. 268–277.) Further, the ALJ considered Plaintiff's testimony regarding her difficulties driving, due to neck stiffness and arm

numbness, and sitting for long periods of time and Plaintiff's estimation that, prior to the Date Last Insured, she could walk a quarter mile and lift a half gallon of milk. (Tr. 26, 49, 69, 71.) Finally, the ALJ considered Plaintiff's testimony that she worked part-time after the Date Last Insured and concluded that although this work was not gainful, it indicated that Plaintiff's daily activities have been somewhat greater than what Plaintiff alleges. (Tr. 61.)

Next, the ALJ considered medical evidence during the Relevant Time Period. In August 2007, Plaintiff was treated by Dr. David Obley for pain in her ankle and Dr. Obley noted "slight degenerative change" and swelling, but no "fracture, dislocation, or destruction lesion." (Tr. 27, 812.) With regard to Plaintiff's April 2008 car accident, the ALJ stated as follows:

> As mentioned above, the record contains a significant amount of evidence from *after* the date last insured. Specifically, it appears that the claimant sustained injuries in a motor vehicle accident that occurred in April of 2008, which is just after the date last insured. Specifically, she complained of pain in her neck and left shoulder. Imaging revealed "very advanced" osteoarthritis and degeneration in the cervical spine (Exhibit 13F). Later, the claimant underwent cervical discectomies, which was almost one year *after* the date last insured (Exhibit 3F). While it is certainly unfortunate that the claimant's date last insured expired prior to April of 2008, the undersigned reminds the readers that this evidence is not considered sufficient to establish disability prior to the date last insured. Rather, one could reasonably argue the intervening motor vehicle accident that occurred in April of 2008 worsened the claimant's symptoms only after the date last insured and indicates that the evidence after the date last insured does not relate[] back prior to the accident.

(Tr. 25) (emphasis in original.) Further, as to Plaintiff's cervical spine pain, the ALJ determined as follows:

> However, as for the radiating neck pain, there simply is no objective imaging of the cervical spine prior to the date last insured in the record. Although the record contains imaging of the cervical spine *after* the date last insured, the intervening motor vehicle accident could have reasonably caused the worsening in the alleged symptoms and indicates the impairments may not relate back to prior to the date last insured (Exhibit 13F).

(Tr. 27) (emphasis in original.)

Additionally, the ALJ noted that, during the Relevant Time Period, Plaintiff's treating physicians did not note physical limitations to substantiate Plaintiff's allegations. (Tr. 27.) Specifically, treatment notes show that although Plaintiff occasionally complained of joint and muscle pain, Dr. Carol Elkins, Plaintiff's primary care physician, found Plaintiff's extremities to be within "normal limits" and only noted Plaintiff's neck pain in one visit. (Tr. 27, 992–996.) Further, although Plaintiff sought specialty treatment from Dr. Marianne Shaw for her arthritis, there are no treatment notes from the Relevant Time Period because, as Dr. Shaw noted in April 2008, Plaintiff returned for treatment "after a long hiatus—last visit was 9/06." (Tr. 1043.) Given these treatment notes, the ALJ determined that it was "reasonable to limit [Plaintiff] to a reduced range of sedentary work activities." (Tr. 27.)

As to opinion evidence, the ALJ considered Dr. V. Rama Kumar's opinions in his Disability Determination Explanation for the Relevant Time Period. (Tr. 124–132.) Dr. Kumar determined that Plaintiff was capable of performing "medium work" in the Relevant Time Period because her physical examination showed that Plaintiff's condition was "generally benign" and controlled by medication. (Tr. 128.) The ALJ, however, determined that "the evidence of the record justifies greater limitations than those identified by Dr. Kumar." (Tr. 29.)

Next, the ALJ considered opinion evidence provided by Dr. Elkins, which included a medical source statement, a report of physical capacity as to Plaintiff's upper extremity only, and a narrative summary of Plaintiff's treatment history, in which Dr. Elkins commented on Plaintiff's treatment history and opined on Plaintiff's physical, work-related limitations. (Tr. 1034–1041.) The ALJ afforded Dr. Elkins's opinions "little weight," finding that Dr. Elkins's opinions were inconsistent with medical evidence during the Relevant Time Period. (Tr. 29.) Finally, the ALJ considered statements submitted, as part of Plaintiff's disability application, by her husband,

daughter, and friends. (Tr. 30, 286–293.) The ALJ found that the "statements for the most part, merely restate the testimony of [Plaintiff] regarding the severity and nature of her symptoms." (Tr. 30.)

Plaintiff does not dispute that she had the burden of establishing her disability during the Relevant Time Period. (Dkt. 19 at 2.) *See* 42 U.S.C. § 423(a)(1)(A) (stating that an individual is entitled to a disability insurance benefit when, among other prerequisites, the individual "is insured for disability insurance benefits"); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (holding that "a claimant is eligible for benefits where she demonstrates disability on or before" the date claimant was last insured); *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) ("[T]o prove her eligibility for DIB [disability insurance benefits], [claimant] had to prove that she suffered from a disability between her alleged onset of December 2004, and her last-insured date of December 2005."). The issue, Plaintiff argues, is that the ALJ "did not acknowledge [Plaintiff's] long history of cervical spine problems prior to her insured status expiring." (Dkt. 19 at 9.) Essentially, Plaintiff argues that the findings accompanying the x-ray taken after her April 2008 car accident show pre-existing *degenerative* problems, which were not solely attributable to the accident. (Dkt. 19 at 11.)

In support of her argument, Plaintiff contends that her medical records prior to her Alleged Onset Date "reveal ongoing history and treatment for her cervical spine." (Dkt. 19 at 10.) First, Plaintiff cites to October 2005 progress notes by Dr. Shaw, Plaintiff's rheumatologist, in which Dr. Shaw noted that Plaintiff sustained a herniated disc in her neck and resulting joint pain from a car accident Plaintiff was involved in "many years ago." (Tr. 1057.) Dr. Shaw further noted that although Plaintiff had tenderness, Dr. Shaw could "not detect any definite synovitis" upon examination and that it was "unclear . . . why [Plaintiff] should have sudden worsening of

symptoms, as historically there does not seem to be any trigger." (Tr. 259.) Plaintiff states that Dr. Shaw continued to treat Plaintiff in 2006 for chronic pain and that Dr. Shaw noted Plaintiff's tenderness in her cervical spine. (Dkt. 19 at 10; Tr. 1049, 1052.)

Next, Plaintiff cites to medical evidence after the Date Last Insured. (Dkt. 19 at 10–11.) On April 1, 2008, Dr. Shaw provided treatment notes based on a chest x-ray of Plaintiff. (Tr. 1051.) Dr. Shaw noted "mild osteophyte formation" in Plaintiff's thoracic vertebrae, but that this area was "otherwise unremarkable." (Tr. 1051.) Dr. Shaw further noted Plaintiff's tenderness in her lower cervical spine. (Tr. 1043–1044.) Next, after Plaintiff's April 2008 car accident, Dr. Joy Harrison, Plaintiff's attending physician, noted that Plaintiff complained of pain in her left shoulder, left arm, and left side of her neck. (Tr. 800.) Dr. Richard Williams, another attending physician, noted that "[t]here is moderate to marked degenerative changes of the articular pillars and facet joints laterally as well as severe degenerative disc disease of the lower cervical disc levels" and that there was "[n]o acute process." (Tr. 805.) In February 2009, Plaintiff underwent surgery for a cervical discectomy and fusion. (Tr. 328.) In a discharge summary, treating physician Dr. David Okonkwo noted that Plaintiff stated that she sustained a herniated disc in a car accident "20 years ago." (Tr. 328.)

An ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545. "Evidence post-dating an individual's insured status may be relevant and properly considered if it bears 'upon the severity of the claimant's condition before the expiration of his or her insured status.'" *Meek v. Astrue*, No. 308-CV-317-J-HTS, 2008 WL 4328227, at *2 (M.D. Fla. Sept. 17, 2008) (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir.1984)); *Cooper v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 748, 754 (E.D. Mich. 2003) ("Medical

evidence that postdates the insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition prior to the expiration of insured status.").

Therefore, an ALJ's "focus on the medical evidence dated during the relevant time frame, to the exclusion of all the other medical evidence in the record, [is] flawed." *Fay v. Astrue*, No. 8:11-CV-1220-T-JRK, 2012 WL 4471240, at *3 (M.D. Fla. Sept. 27, 2012). "Rather than making a wholesale rejection of the medical evidence dated outside the relevant time frame, the ALJ should have considered whether any of the evidence is (1) reasonably proximate to Plaintiff's date last insured and (2) bears upon the severity of Plaintiff's condition; and if so, the ALJ then should have determined the effects of such evidence, if any." *Id*; *Ward v. Astrue*, No. 300-CV-1137-J-HTS, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008) (affirming the ALJ because it was "clear the judge recognized the need to consider all records in the context of Claimant's DLI [date last insured] because "[t]hroughout [the ALJ's] analysis, he made frequent reference to the date she was last insured for benefits . . . and he was careful to couch his findings as to her mental status in terms of its existence on or before her DLI."). An ALJ's "failure to properly consider the medical evidence of record frustrates judicial review." *Fay*, 2012 WL 4471240, at *4.

In this case, the ALJ explicitly stated that his decision "will not consider evidence from *after* the date last insured." (Tr. 24) (emphasis in original.) With regard to medical evidence pertaining to Plaintiff's cervical spine condition, the ALJ focused on medical evidence from the Relevant Time Period (Tr. 27, 29), and his only mention of the medical evidence after the Date Last Insured is as follows:

> While it is certainly unfortunate that the claimant's date last insured expired prior to April of 2008, the undersigned reminds the readers that this evidence is not considered sufficient to establish disability prior to the date last insured. Rather, one could reasonably argue the intervening motor vehicle accident that occurred in April of 2008 worsened the claimant's symptoms only after the date last insured

> and indicates that the evidence after the date last insured does not relate[] back prior to the accident.

(Tr. 25.)

It is Plaintiff's burden to establish that she was disabled during the Relevant Time Period in order to establish her entitlement to disability benefits. *Moore*, 405 F.3d at 1211. However, the Court finds that the ALJ did not adequately explain whether medical records outside the Relevant Time Period had any bearing on the severity of Plaintiff's spinal condition during the Relevant Time Period such that this Court can conduct a meaningful review. *Meek*, 2008 WL 4328227, at *2; *See Owens v. Heckler*, 748 F.2d 1511, 1514–15 (11th Cir. 1984) ("A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful."). Instead, the ALJ concluded, without explanation, that it would be "reasonable" to infer that Plaintiff's April 2008 car accident caused the cervical spine issues reflected in the April 2008 records. (Tr. 25.) Without an explanation by the ALJ regarding whether evidence outside the Relevant Time Period bore on Plaintiff's spinal condition during the Relevant Time Period, "the undersigned cannot determine whether substantial evidence supports the ALJ's Decision in this regard." *Fay*, 2012 WL 4471240, at *4.

Accordingly, the Court finds that the ALJ erred by failing to address whether medical evidence relating to Plaintiff's cervical spine condition outside the Relevant Time Period bore on the severity of Plaintiff's condition during the Relevant Time Period and the effects of such evidence, if any, on the ALJ's determinations. Therefore, the case is remanded for the ALJ to address the evidence relating to Plaintiff's cervical spine condition outside the Relevant Time Period and its bearing, if any, on Plaintiff's cervical spine condition during the Relevant Time Period.

**B.      Weight Accorded to Dr. Elkins's Opinions**

Plaintiff next contends that the ALJ erred by failing to articulate good cause for not crediting the opinions of Plaintiff's treating physician, Dr. Elkins. (Dkt. 19 at 13.) Specifically, Plaintiff argues that, contrary to the ALJ's findings, Dr. Elkins's treatment records and the treatment records of other providers are consistent with Dr. Elkins's opinions. (Dkt. 19 at 13.)

Dr. Elkins provided three opinions, including a medical source statement (Tr. 1034–1035), a report of physical capacity as to Plaintiff's upper extremity only (Tr. 1037–1038), and a narrative summary of Plaintiff's treatment history (Tr. 1040–1041). In her medical source statement, Dr. Elkins found that Plaintiff could sit for three hours out of an eight hour workday, could stand or walk for two hours out of an eight hour workday, and requires three hours out of an eight hour work day to be in a reclining or lying position due to pain, fatigue, and knee swelling. (Tr. 1034.) Further, Dr. Elkins found that Plaintiff could rarely, if ever, lift or carry even as little as one pound or balance, but that Plaintiff could occasionally stoop. (Tr. 1035.) Dr. Elkins stated that Plaintiff's diagnoses are osteoarthritis, herniated disc, and fibromyalgia. (Tr. 1035.) The medical source statement is dated May 20, 2013 and stated that the restrictions noted existed and persisted since at least January 1, 2008. (Tr. 1035.)

Dr. Elkins also prepared a report of Plaintiff's physical capacity as to her upper extremity only, which is also dated May 20, 2013 and pertains to Plaintiff's condition as of January 1, 2008. (Tr. 1037–1038.) Dr. Elkins found that Plaintiff was unable to lift ten pounds, could use her hands four hours out of an eight hour workday, grasp with both hands for two hours out of an eight hour workday, and had no finger dexterity limitations. (Tr. 1037.) Finally, in her narrative summary, dated May 11, 2013, Dr. Elkins stated that she treated Plaintiff beginning in the 1990s and stated as follows: "I understand this letter is to provide information regarding [Plaintiff's] functional and

clinical state prior to 2005" and that her opinions in the letter were based on "records on hand that [are] dated 2002 through 2005." (Tr. 1040–1041.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, the claimant's ability to perform despite impairments, and the claimant's physical or mental restrictions. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted). A treating physician's testimony is "given substantial or considerable weight unless good cause is shown to the contrary" and an ALJ must specify the weight given to the treating physician's opinion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). An ALJ's failure "to clearly articulate the reasons for giving less weight to the opinion of a treating physician" is reversible error. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for giving a treating physician's opinion less weight "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

When a medical opinion "contain[s] a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date," the opinion is relevant only to the extent it is "consistent with pre-insured-date medical evidence." *Mason*, 430 F. App'x at 832; *See Goff ex rel. Goff v. Comm'r of Soc. Sec.*, 253 F. App'x 918, 921 (11th Cir. 2007) ("The record indicates that the ALJ stated with sufficient specificity that he was according no weight to [a treating physician's] opinion letter because he found it did not represent [claimant's] work status prior to his last insured date.").

In this case, the ALJ afforded Dr. Elkins's opinions "little weight," stating that her opinions were inconsistent with medical evidence during the Relevant Time Period. (Tr. 29.) The ALJ cited Dr. Elkins's treatment notes, finding that they "fail to mention any abnormalities during physical examination during most of the period at issue" and first noted abnormalities in Plaintiff's neck and upper extremities in April 2008. (Tr. 29.) Further, Dr. Elkins stated that she relied on x-rays and MRIs in reaching her opinions, but the ALJ noted that there was no x-ray or MRI evidence during the Relevant Time Period upon which Dr. Elkins could have relied and that Dr. Elkins may be referring to Plaintiff's April 2008 x-ray after her car accident. (Tr. 29.) Finally, the ALJ found that Dr. Elkins's opinions were undermined because Plaintiff did not seek treatment from a specialist during the relevant time period and "[g]iven the extreme limitations in Dr. Elkins' opinion, one could reasonably expect the claimant to seek treatment from someone other than her primary care provider." (Tr. 29.)

The Court finds that the ALJ's decision to accord Dr. Elkins's opinions little weight was adequately articulated and supported by substantial evidence. Dr. Elkins's treatment notes during the Relevant Time Period support the ALJ's finding that these treatment notes are inconsistent with Dr. Elkins's opinions. Specifically, during a July 2007 examination by Dr. Elkins, Plaintiff did not complain of joint or muscle pain and Dr. Elkins noted that Plaintiff had a full range of motion in her extremities. (Tr. 995.) In October 2007, although Dr. Elkins noted Plaintiff's joint pain, Plaintiff had a full range of motion and no issues were noted with Plaintiff's neck or extremities. (Tr. 994.) In January 2008, Plaintiff reported joint and muscle pain, but her chief complaint was treatment for a chronic sinus infection and no issues regarding Plaintiff's neck or extremities were noted by Dr. Elkins. (Tr. 993.) Finally, in March 2008, Plaintiff complained of joint, muscle, and neck pain, as well as neck tenderness. (Tr. 992.) However, Plaintiff was being

treated for a sore throat, cough, and associated swollenness. (Tr. 992.) Also, the record supports the ALJ's finding that Plaintiff was not treated by an arthritis specialist during the Relevant Time Period because she was treated by Dr. Shaw on April 1, 2008 for the first time since September 2006. (Tr. 1043–1045.)

Plaintiff urges that Dr. Elkins's treatment records during the Relevant Time Period show that Plaintiff "was reporting increasing joint pain." (Dkt. 19 at 17–18.) This Court, however, may not re-weigh the evidence or substitute its judgment for the ALJ's, but instead must determine whether the ALJ's decision is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. Upon review of the evidence, the ALJ's reasoning for according Dr. Elkins's opinion little weight because her opinions were inconsistent with her treatment records during the Relevant Time Period was supported by substantial evidence. Further, the ALJ's finding that other medical evidence during the Relevant Time Period did not reveal that Plaintiff was treated for her pain by providers other than Dr. Elkins is supported by substantial evidence. Therefore, the ALJ adequately explained, with substantial evidentiary support, that Dr. Elkins's opinions were not bolstered by the evidence and were inconsistent with Dr. Elkins's own treatment records. Accordingly, Plaintiff's second contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2. The Clerk of the Court is directed to enter judgment consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida, on August 2, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record